HELEN LOUISE JONESON, appellee-cross-appellant, v. GEORGE ALAN JONESON, defendant, CARL EDWARD JONESON, appellant-cross-appellee, DON RHODEN, Sheriff of Mills County, and SEARS-ROEBUCK & COMPANY, defendants.

No. 49960.

(Reported in 102 N.W.2d 911)

May 3, 1960.

Cook & Drake, of Glenwood, for appellant-cross-appellee.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee-cross-appellant.

GARRETT, J.—Helen Louise Joneson, appellee, and George Alan Joneson were married in October 1955. It was her second and his third marriage. In 1954 and while living with his second wife, Bernice, George bought an acre of unplatted land in Mills County on which a country schoolhouse was located. In order to purchase this property and convert it into a habitable dwelling, George, in 1954, borrowed of his father, Carl Edward Joneson, hereinafter referred to as appellant, fifty dollars to make the down payment and later, on October 28, 1954, borrowed $1150 to pay the balance of the purchase price. There is evidence that on December 1, 1954, George borrowed of his father $350 to pay the carpenter and material bills in connection with remodeling the schoolhouse. The two last items were evidenced by checks from the father to his son.

Exhibit 15, a receipt in appellant's handwriting for $500 signed by G. A. Joneson and bearing date January 12, 1955, recites: "Received from C. E. Joneson Five Hundred dollars ($500.00) for carpenters' wages and building materials."

From the record we must find that the amounts shown were received by George from his father before the premises were occupied by George and his wife, Bernice, as their homestead. Appellant testified:

"Q. Do you know from your own knowledge and information when Alan and his then wife, Bernice, moved in and stayed regularly in this premises?

"Mr. Peterson: That's immaterial.

"A. Well, they was in and out of there. They did make their home in the latter part of January, after the work was all completed."

George Alan Joneson testified regarding Exhibit 15:

"A. Yes, that is a receipt I gave my father when he gave me $500 in cash, so I gave him a receipt for it. Q. What was done with this $500? A. That was used to pay for the building material and some of the plumbing. * * * Q. Now do you recall when you and Bernice first started regularly living out there? A. The latter part of January. * * * Bernice and I were residing in the homestead on February 15, 1955, and had been for about a month."

This evidence was not controverted.

Appellant testified:

"Exhibit 14 is a note to me from my son, dated February 15, 1955, for $2050, which was due me."

George, recalled, testified:

"Q. Did your father, C. E. Joneson, ever make demand of you for the payment of the note in the amount of $2050?

"Mr. Peterson: That's immaterial.

"A. Yes, he did, twice. The first of January of '56 and again in April of '56."

On April 23, 1956, George drove away in his truck leaving plaintiff-appellee in a destitute condition. In October 1956 she filed for a divorce, alimony and attorney fees. She also filed a criminal charge of desertion and caused the arrest of her husband in Missouri. On the trial of her divorce action the court found she failed to prove cruelty as contemplated in the divorce statutes and denied her any relief. On appeal to this court the judgment was reversed "and the cause remanded for judgment awarding plaintiff a divorce, alimony, attorney fees, costs, etc., in the trial court, in such form and amounts as the trial court may determine is proper." Joneson v. Joneson, 249 Iowa 343, 349, 86 N.W.2d 877, 881. Pursuant to mandate of the Supreme Court the trial court on January 30, 1958, granted plaintiff a divorce, $750 permanent alimony, $625 attorney fees, $337.10 court costs and $165 unpaid temporary alimony, the total being $1877.10. That amount was established as a lien upon the homestead which was described in plaintiff's petition filed October 5, 1956.

On March 13, 1957, George Alan Joneson executed and delivered to his father, Carl Edward Joneson, a confession of judgment for $2311.24 and costs. It was filed, execution issued and levy was made on the same day. The homestead was sold at sheriff's sale on April 12, 1957, to Carl Edward Joneson for the full amount of the execution and certificate of sale was issued to him. The sheriff failed to plat the homestead.

On March 22, 1958, Helen Louise Joneson brought this action seeking to have said sale, certificate and judgment canceled and held for naught. The trial court established a first

lien in favor of appellant in the amount of $1200 and 5% interest thereon from November 1, 1954, that representing the purchase price of the property, and established appellee's lien on said homestead in the amount of $1877.10 subject only to appellant's prior lien. From the judgment entered Carl Edward Joneson appealed and Helen Louise Joneson cross-appealed.

I. Appellant first contends the homestead was subject to execution for the full amount of his judgment for the reason that it represents indebtedness contracted prior to the occupancy of the homestead. On the record we are constrained to hold that the principal amount of said note represents money advanced to the son and used by him in the acquisition and construction of said homestead prior to its occupancy as such.

Section 561.21, Code of 1958, provides:

"Debts for which homestead liable. The homestead may be sold to satisfy debts of each of the following classes:

"1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution. * * *

"3. Those incurred for work done or material furnished exclusively for the improvement of the homestead."

None of appellant's claim is based on work done or material furnished by him for the improvement of the homestead so it must be said subsection 3 has no application here. There is more than an inference from the record George Alan Joneson had no other property liable to execution.

II. As to the priority of liens appellant's judgment became a lien on March 13, 1957. Appellee's judgment lien was entered on or about January 30, 1958. On this issue appellant must prevail unless the lis pendens statute subordinates his rights to those of appellee. No attachment is involved. Section 624.24, Code of 1958, provides: "* * * the lien shall attach from the date of such entry of judgment." Andrew v. Winegarden, 205 Iowa 1180, 1184, 1185, 219 N.W. 326; James v. Weisman, 161 Iowa 488, 143 N.W. 428. Appellee relies upon the lis pendens statutes, section 617.10 of which, so far as material here, provides: "When a petition affecting real estate is filed, the clerk of the district court where filed shall forthwith index

same in an index book to be provided therefor, under the tract number which describes the property, * * *" and section 617.11: "When so indexed said action shall be considered pending so as to charge all third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's rights."

A divorce action may constitute lis pendens where specific property is described and sought to be charged with payment of alimony. 54 C. J. S., Lis Pendens, section 11, page 578. Graham v. Pepple, 129 Kan. 735, 284 P. 394; Rumsey v. Rumsey, 150 Kan. 49, 90 P.2d 1093.

The record is barren of any showing of compliance or noncompliance with said sections, but the presumption is that public officers perform their duties, and since appellant made no showing to the contrary we shall assume the clerk of the district court did what the statutes required of him and indexed appellee's divorce action in proper manner in the appropriate index book. In her petition for divorce she described the land involved and asked that the title be quieted in her, and for alimony.

"While it has been held that compliance with the statutes as to notice of pendency of an action is not presumed and must be proved, it has also been held that, in the absence of any allegation that a lis pendens was not filed, there is a presumption that a lis pendens was filed pursuant to statute." 54 C. J. S., Lis Pendens, section 58, page 630.

Appellee claims her action, pending when appellant's judgment was entered, gives her priority over appellant's judgment. Had no divorce action been pending when appellant's judgment lien attached, there would be no question about his right to subject the homestead to payment of the judgment, assuming it was proven it represented indebtedness incurred prior to the acquisition of the homestead.

"Under the statute, Code, section 10155, the homestead is, of course, liable for the debts antedating its acquisition, and when this debt was reduced to judgment on April 3, 1933, such judgment became a lien upon all the interest of Oscar Hofmann, including any homestead right which he might have in the real

estate. Wertz v. Merritt, 74 Iowa 684, 39 N.W. 103; Therme v. Bethenoid, 106 Iowa 697, 77 N.W. 497; Solnar v. Solnar, 205 Iowa 701, 216 N.W. 288; James v. Weisman, 161 Iowa 488, 143 N.W. 428." Kramer v. Hofmann, 218 Iowa 1269, 1275, 257 N.W. 361, 364.

█ While the rule just mentioned is quite clear it cannot be disputed that appellee, from the time of her marriage, had certain rights with reference to her husband's property. Section 598.14, Code, provides: "When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right." The court has full authority to set aside specific property of the husband to the wife as alimony, whether exempt or not. Szymanski v. Szymanski, 188 Iowa 931, 176 N.W. 806; Daniels v. Morris, 54 Iowa 369, 6 N.W. 532; Williamson v. Williamson, 185 Iowa 909, 171 N.W. 114.

This being true it must be recognized that she has a definite interest in his property whether she chooses to exercise it or not. While it may require a trial by a court of equity to determine specifically what share of her husband's property shall be set aside to the wife as alimony for her care and support, her right to have that question determined exists and makes it quite clear that she has an interest in his property, and a right, upon filing for divorce, to have that matter determined. It cannot be said she may have it determined only if his debts are fully paid.

█ In Shipley v. Shipley, 187 Iowa 1295, 1304, 175 N.W. 51, 55, this court said: "The claim for alimony is incident to the status of the parties, and the suit to set apart to the complainant certain property, as such, or to fasten allowance for alimony as a specific lien on specified property, is quite as definitely in rem as that for divorce. * * * The relief sought is not personal in the sense that a judgment on an ordinary indebtedness is personal. The obligation of the husband for the support of the wife affords the basis for the court's action, but this is not regarded as a debt, in the sense of a pecuniary obligation. It arises from a duty which the husband owes as well to the public as to the wife, though not resting on any specific contract."

It would be inconceivable that husband would be allowed to disregard all of his marital obligations, and then, by a confession of judgment in favor of an outsider, take from his wife the last vestige of property which a court of equity would give her as her just share of his property for her support and maintenance.

"The foundation for the decisions herein that the various exemption statutes noted are not applicable in the allowance or collection of alimony awards is the inherent nature and purpose of that obligation. It does not arise from any business transaction but from the marital relation. It is not founded on either an express or implied contract but on the natural, moral, and legal duty of the husband to support his wife, and the public policy of the state, as established by legislation and judicial decision. The wife's right of support is recognized in all civilized countries. It exists during the marriage but it is not a debt owing by the husband in its legal or common acceptation. He cannot escape the obligation by abandoning his wife, or by his misconduct, even though it results in a dissolution of the marriage. The state has a social and financial interest in the performance of that duty and will not permit him to cast it off. In the words of Sir J. P. Wilde, in Sidney v. Sidney, 4 Swab & T. 178, 182: '* * * no man should, in my judgment, be permitted to rid himself of his wife by ill-treatment, and at the same time escape the obligation of supporting her.'" In re Guardianship of Bagnall, 238 Iowa 905, 938, 29 N.W.2d 597, 614.

In Davis v. Davis, 228 Iowa 764, 773, 292 N.W. 804, 808, after quoting section 10481 [now section 598.14] we said: "Under this section and under our decisions the court had complete jurisdiction to settle the property rights of the parties and to award full relief respecting the property. In the exercise of that jurisdiction the court had the power to decree that the awards for alimony and child support should be a lien on any real estate which the appellant owned. The fact that judgment was entered for the awards would in itself make them liens upon any real estate owned by him. See Millisack v. O'Brien,

223 Iowa 752, 273 N.W. 875; Luedecke v. Luedecke, 195 Iowa 507, 192 N.W. 515; Baird v. Connell, 121 Iowa 278, 96 N.W. 863."

 The numerous awards of alimony sustained by this court are conclusive holdings that the wife has an interest in the property of her husband for her support and maintenance at all times during their married life, which means she has rights as plaintiff which a third party cannot defeat and in which he can acquire no interest during the pendency of her action.

In Graham v. Pepple, supra, the facts are quite similar to those in this case. Plaintiff filed suit for divorce and asked that certain real property be set aside to her as permanent alimony. Thereafter one Pepple filed suit against her husband, judgment was entered and the land was ordered sold. Before sale, the court in the divorce suit awarded plaintiff said land subject " 'to all valid liens at the time of filing of the divorce action.' " To prevent the sale plaintiff brought action against the sheriff and Lindahl to have the respective rights of the parties determined. The court said at pages 737, 738 of 129 Kan., page 395 of 284 P.:

"* * * our own cases are conclusively to the effect that, in an action for divorce and alimony, properly and timely instituted and prosecuted, where the plaintiff in her petition sets out specifically the property which she seeks to have subjected to her rights, third parties are thereby constructively notified, and the doctrine of lis pendens will protect her claim thereto against a third party's claim founded on some legal process invoked subsequently. Wilkinson v. Elliott, 43 Kan. 590, 23 P. 614, 19 Am. St. Rep. 158; Kremer v. Schutz, 82 Kan. 175, 107 P. 780, 27 L. R. A. (N. S.) 735. Such is the prevailing rule. W. H. Gallaspy's Sons Co. v. Massey, 99 Miss. 208, 54 So. 805, Ann. Cas. 1913 D, 950. In Freeman on Judgments (4th Ed.) 360–363, it is said:

" 'A suit for divorce and for alimony and the division of common or other property may or may not operate as a lis pendens. If the complaint does not designate particular property, and seek to subject it to the satisfaction of the wife's

claims, or to have it set aside as hers or for her use, she is not entitled to the benefit of the rules of lis pendens, because her suit does not apply to any specified part of the husband's estate, real or personal. * * * If, on the other hand, the pleadings in a suit for divorce describe specific property in respect to which relief is sought, either by making it chargeable with the payment of alimony, or setting it apart for the use of or as the property of one of the parties, or of partitioning or dividing it between them, the doctrines of lis pendens apply.' Section 196."

We hold appellee's judgment lien is prior to appellant's judgment lien and that the judgment of the trial court should be so modified as to establish appellant's lien upon said premises subject to the prior lien of appellee in the amount of $1877.10 and interest. The costs are taxed to appellant.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur except PETERSON, J., who takes no part, and BLISS and OLIVER, JJ., not sitting.